We're on to the second case of the morning, call 210-998-TECO-Valdivia. Doing business as V&A Landscaping v. Pascualino-Divito, individually. And doing business as Patent and Construction. On behalf of the Evelyn and Matthew Sheehan, on behalf of the Evelyn and Mr. Joseph Bonavina. All right, Mr. Sheehan. Good morning, Your Honors. May it please the Court, my name is Matthew Sheehan. I represent the appellant in this appeal. Obviously, it involves two statutes, the Contribution Act and the Illinois Prevailing Wage Act. First of all, I'd like to address the cement mason's case, which obviously the trial court relied upon and based its decision. I think that case is a very narrow holding. The only holding that came out of that case is that the court concluded that the general contractor cannot guarantee payment of wages to the subcontractor's employees. In fact, in that case, there was no allegation that the general contractor violated the act itself. Only that the subcontractor wasn't solvent, couldn't pay into the fund, and therefore the fringe benefit fund went after the general and the court. The very last part, the very last paragraph of cement is because we find the act does not impose liability on the defendant here. So, while yes, the issue was guarantee that they be paid properly, I think the bottom line is this act does not impose a liability on the defendant. Well, and that's what the trial court found with regards to count one, and we're not appealing that section. However, with the Contribution Act, I think the general contractor can be involved, especially since, in this case, the general contractor violated the act in two distinct manners. Number one. But if the act doesn't impose a liability on him, how could he be responsible for contribution? Well, it's very similar to the Brockman case that was cited in our brief. In that case, the landowner was cited for environmental violations. He third-partied the transporters as third-party defendants. The court found under the Environmental Protection Act, those transporters and generators couldn't be held liable, but that the landowner did have a viable cause of contribution under the Contribution Act because the breach of his duty to protect the environment arose from the act, and the breach of that duty is a tort, which allowed the defendant in that case to maintain its contribution claim. It's very similar to the case here. But isn't the relevant inquiry under the Contribution Act that suffered by the underlying plaintiff? Isn't that what we have to focus on? And how does an injury suffered by a subcontractor implicate contribution? Well, I think by virtue of the act. It's the breach similar to the EPA. It's the breach of the act that gives rise to the tort. Well, there's no what's the tort. It's financial only. It's not injury to person or property. Yes, but if you're speaking about the Mormon doctrine, we've alleged fraudulent concealment. I think there is an exception to the Mormon doctrine with respect to economic loss in that respect. But beyond that, to answer Justice Zino's question, I think it's the breach of the act itself. And the fact that the general contractor here, DeVito, failed to provide the notice that's clearly set out to give to the subcontractor, this is a Prevailing Act, Prevailing Wage Act job. Therefore, now the sub would be on notice that he's got to do that. That was never done in this case. Therefore, the sub was not on notice. And the other breach was the posting requirement. The general contractor was required to post notice of the prevailing wage rates at the job to all the workers, including Valdivia's employees, and that was not done. So there was a breach of duty literally to Valdivia's employees by not posting at the job, but also the notice. So what is Valdivia's responsibility to realize that he is working in a city or, you know, in, I guess, a village, whatever its name is, that there is public money involved, and that he should look at statutory authority to see what his responsibilities are? Well, I think he does have that responsibility. William, again, we're not saying that he may not be liable for the witness. We certainly hope he's not found liable. But if he is, all that we're asking is that the trial court look at DeVito's acts here as far as contribution. The trial court may find that DeVito's breaches of the act did not contribute. We believe that it did. It was the only reason. But the act is specific that once the general contractor gets the contract, he has to give notice, a written stipulation to the sub about the fact that this is a prevailing wage act job that wasn't done in this case. And in addition, the posting requirement at the job site was also different. And that's why I think the case is very simple. But that was the failure vis-a-vis the subcontractor. The injury or the tort has to be vis-a-vis the underlying plaintiffs or the employees, correct? Correct. So how do you get from step one to step two? Well, I think the breach of the posting requirement is directly to the employees because the posting requirement is supposed to be to all the workers. And that was not done. But just as the prevailing wage is to be paid, I mean, it's just the notice. Right. It doesn't entitle them. It's not a contractual obligation. It doesn't entitle them to get it. It's just a notice that if there's public work being done, that the failing wage must be paid. Right. But I think it doesn't require or doesn't put in an obligation or a certain obligation. Well, I think it does create the obligation to give the written stipulation to the sub and creates an obligation to post to all the workers. And the breach of that duty, just as the breach of the duty under the EPA, although the third-party defense can be held directly liable to the plaintiff in that Brockman case, the court found that the breach of that duty amounts to a tort. The breach of the failure to protect the environment amounts to a tort. Here, the breach to protect all the workers on the job, to notify all of them that this is a prevailing wage job is a breach to the plaintiff. Are you saying that all violations of statutes constitute tortious conduct? No, I'm not. For the purpose of the Contribution Act? No. So how do we distinguish? How do we know which ones? I believe if the statute itself creates a duty and the general breach is that duty, that that is a tort. Unlike, for example, the cases cited by Appellee or the two Dram Shop cases, there is no requirement in the Dram Shop that an affirmative duty that the Dram Shop refrain from serving intoxicated persons. So that is an exclusive remedy. There is no exclusive remedy provision in the Prevailing Wage Act, just as in the Environmental Protection Act. Well, is there an exclusive remedy provision in the Dram Shop Act? No, there isn't. No, there isn't. No, there isn't. But when you look at the Dram Shop Act and you look at those cases, that's why they found it was sui generis and an exclusive remedy, because it did not create an affirmative duty to refrain from serving intoxicated persons. So the only exclusive remedy, if that intoxicated person leaves and hurts someone, then you can only sue the Dram Shop under that Dram Shop Act. Here, there is an affirmative duty to give the written notice to the sub. There is an affirmative duty to post to all the employees. And the breach of that duty, similar to the Brockman case, is what gives rise to the liability in tort and allows Valedivia to pursue its claim under the Contribution Act in conjunction with the Prevailing Wage Act. Well, if we carried your argument out a little bit, I mean, couldn't it be said then, based on what you just argued, that the Prevailing Wage Act provides the exclusive remedy in Section 11 where it says creates a right of action in an underpaid employee? Well, I think as far as the Department of Labor is concerned, that would be true. But again, I think in this case, the failure, the breaches of the statutory duties by DeVito is what caused the Prevailing Wage not to be paid. Certainly, if Valedivia was aware, the bid would have been different. He would have had to recalculate how he was going to bid on this job. Since he wasn't told he bid what he bid, the general accepted it. And that's really what the equities, I think, are in great favor of Valedivia here, just as the trial court indicated. Well, the equities may be, but if the legislature had intended to impose liability on general contractors for violations vis-a-vis the subcontractors, wouldn't it have provided that in explicit language? Well, again, I guess it could have, but it certainly didn't exclude that this is you couldn't bring a contribution act. There's been no cases since the cement masons either in support or rejecting the fact that a sub could bring a contribution claim under these facts. And I guess that's probably why we're here today. But, you know, I believe that it's very similar to the Stevens case as well. I think one of the arguments by DeVito is that, and I think maybe what the court is getting at, is that we're trying to get around the statute, essentially. You're trying to get indirectly at what you couldn't get directly. But, again, the Stevens case rejected that. And even though there was a tort immunity there, they found that the village could be found or there could be a contribution claim against the village in that case. And I think it's similar to this case. There is nothing in the statute that says we can't bring a contribution claim. There's been no case since cement masons that says we can't bring a contribution claim. I think that the breaches of the statutory duty is what gives rise to the tort and what makes it factually different than the Dram Shop cases cited by the FLE. And I think, you know, the recent amendment as well demonstrates that there was the notice provision, but there was no remedy for the sub if the notice wasn't given. And the recent amendment, I think, is a clarification of that law and provides a remedy now. Obviously not in effect at the time, but I think it supports Valdivia's claims because now in the same case, the general is going to have to pay, if we're able to prove what we've alleged in the complaint, they would have to pay the fines, the interest, and the penalties, which obviously is a big part of what the state is seeking against Valdivia. And, you know, again, I think... In order for there to be contribution? Yes. I mean, that is what the law is, and I think, again, that exact analysis was done in the Brockman case. And in that case, they said that, you know, even if it's – which is kind of like here. So even, you know, the values of the fairness and avoidance of unjust enrichment, even a person who might otherwise be immune is contributed as a cause of the injury. He should be liable in contribution. This is so even if he cannot be directly liable to the plaintiff. So, again, I think under Brockman, which came after the Dramshaw case is actually – or actually no, Stevens did it. Brockman was predated. I apologize. But it stands for the proposition that, just like here, if you've got an unfair result and you've got breach of the duty under the act that creates the liability of tort, even if this third-party defendant couldn't be directly liable to Valdivia's employees or the people as the plaintiff, we can still maintain a contribution claim under the law in Brockman. And, again, I think it's more – the Prevailing Wage Act is more similar in analysis as far as whether or not it's an exclusive remedy to the EPA than the Dramshaw. Because, again, the Dramshaw doesn't create this affirmative duty. The Prevailing Wage Act does. There is this affirmative duty to notify the sub, which wasn't done, and affirmative duty to post the employees, which wasn't done. And that's really what contributed, we think, in great part to the failure to pay the wages. And that's why we're here today looking for the claim to stand. All right. But, again, going back a minute to this issue of economic loss, I mean, the injury to the underlying plaintiffs was the underpayment of the wages. That's an economic loss. How does that implicate tort liability? I think Justice Burkett touched on that, and you answered. What was your answer or your comment? Well, in Brockman and Stevens, there were violations of statutes. And the violation of the statute can create a division of tort. It's not only, for example, negligence. You know, I negligently drove my car. It can create a liability in tort for violation of the statute, just as in Brockman. So that's how we're analogizing it. And the same thing in Stevens. You know, there they are actually the Doyle case where the employer had not – they third-partied in somewhere for violation of the Road Construction Injuries Act. And the same thing is a violation of that act that created the duty – created the liability in tort. And so I think it's very similar to the case of Barr. It's really the violations – there was a general contractor's violations of the act that contributed to the damages to the plaintiff in this case, the underlying plaintiff. And, therefore, I think, you know, the law is clear and the contribution claim should be allowed to stand. And especially given the recent amendment, I think it clarifies the law. I think it supports a division's position. And as far as – I'm sorry. The recent amendment, which one are you referring to? Just the – there was a clarification. The amendment was the most recent. There were several. Yeah, this one is – And the amendment regarding what? This one is, I believe, 2000. Which one? Are we referring to it substantively? Yeah. Or do you want to describe it? Related to the damages? Yes. To the department? Correct. The penalties and punitive damages? Correct. Okay. And you're saying that that recent amendment illustrates what? Well, it clarifies the fact that they had no remedy for when the general doesn't give notice to the sub and the sub fails to pay. Now they've provided a remedy that the general will be held liable for fines, interest, and penalties. To the department? Correct. But, again, that's not going to be on the sub now, which is if the court upholds the trial court's ruling, all of this is on the sub. All of it. For nothing but the fact that the general never told them that it was a prevailing wage job. I mean, this is an oral contract. And so I think I just heard the timer go off. So for all those reasons and the reasons stated in the brief, we'd ask that the case be reversed and remanded to the trial court. You can have an opportunity for rebuttal if you so choose. Mr. Bonavita? Good morning. Good morning. May it please the court, my name is Joe Bonavita. I represent the appellee, Pasolina DeVito, doing business as Patent and Construction. Today we're asking that this court affirm the trial court's determination that Valdivia cannot state a contribution claim under the Contribution Act against DeVito for the alleged violation of the Prevailing Wage Act. What we're confronted here with today is a simple construction of the Contribution Act. The basic premise of the Contribution Act requires that in order to be liable for contribution, you must be liable to the original underlying plaintiff. What it does is it apportions liability amongst the contributing tortfeasors who are both liable. So what it essentially says is that the underlying plaintiff could have sued either one for the injury that it's seeking. It chose to sue one, and then thus that other defendant has a right of contribution against the other. Here, the injury that it's seeking is the unpaid wages. And the Cement Masons case makes very clear that the subcontractor in a case like this, which would be DeVito, has no liability for unpaid wages under the Prevailing Wage Act to the original plaintiff's year. Does it make a difference here that in Cement Masons that was a private entity for all practical purposes? This is the Department of Labor going after first DeVito and then – or no, first Valdivia, who then brings in DeVito. Does it make a difference that we have private versus public entities as the named plaintiffs? Well, here the Department of Labor is actually the only entity that is charged with enforcing the act on behalf of the laborer, so it makes no difference. The duty that the appellant is trying to impose would have to be a duty that runs from us to the plaintiffs, and here to the plaintiffs vis-a-vis the Department of Labor who's bringing their action. So the Department of Labor merely steps in as an administrative plaintiff, but the Department of Labor, certainly the fact that they're a public entity, has no relevance on the issue of the underlying liability. Well, the fact that we have this public entity Department of Labor, might that not bring it a little closer then to the analysis in people, people of the state of Illinois versus Brockman? Well, it might, and I think that Brockman effectively illustrates our point. I think that when we take a look at people versus Brockman, there are a few things to take away from that. I think it's very consistent with our position. People versus Brockman, first of all, says that you must owe a duty to the underlying plaintiff. Here, in people versus Brockman, it says, without question, the third-party defendants had a duty not to contaminate the environment. That was a duty owed to the state to not to pollute. Also, in people versus Brockman, the court actually parsed out certain contribution claims which could be stated and certain ones which could not. It said, as to those contribution claims that are solely the responsibility of the landowner, there's no contribution there. Here, the payment of the unpaid wages is solely the responsibility of Valdivia, and thus there's no contribution claim there. I don't think that anybody should glance over the idea that Brockman did say that when a duty is solely your responsibility, there is no contribution. So what Brockman did was it looked at both of these people caused the same injury, which here would have had to have been the underpayment of wages, which would have meant that we can't be liable. Both of these – both of the defendants in Brockman polluted. They both violated this duty to the state not to contaminate. And so out of that same injury, he was able to apportion that liability. But, counsel, why doesn't the prevailing wage act, their notice and posting requirements impose the duty on the general contractor? I think we need to separate posting versus paying. First of all, the posting requirement that is cited is not in the act as it was in effect. Public Act 9338 does not have the posting requirement in there. Assuming that they are able to state a claim against the posting requirement, the duty that we have to look at, posting versus paying, are two separate duties. And the only duty that's relevant here is the duty to pay. That's what they sued for, and that's the duty that we must be required to contribute to under the Contribution Act. The act says if you don't post, there are certain penalties. It doesn't say that if you don't post, you can be liable for unpaid wages. If you don't post, you're placed on a list of banned contractors and whatnot. Is your client on that list now? We haven't been. There has to be a violation, which means that the Department of Labor has to have made a finding that there was a failure to post. We certainly don't admit that we have failed to post. We haven't answered the complaint. It was dismissed on legal grounds. But I think posting versus paying is an important issue here because in order – the injury that suffered is not – they're not suing for lack of posting. They're suing for underpayment of wages. And unless we can be held liable for the underpayment of wages, then that's the only way that we can get the contribution. But they're saying that because they did not have notice that this was a prevailing wage job, and then once they got the job, they didn't see the posting, that they were underpaid. So they're saying that these are these direct causes of that underpayment. I would again say that the underpayment is the actual issue. But more important than that, if that is the line of reasoning, then the posting requirement merely informs the underlying plaintiffs of their own employer's duty. And in essence, it's a notice requirement. It's not a payment requirement. So what it would be saying is your employer better be paying the prevailing wage. And I don't see how there's a disconnect there between saying that that is the same as us being required to actually pay that prevailing wage. The subcontractor – again, the subcontractor here is attempting to sort of impose this liability. But what we have to look at is whether or not the subcontractor has its own liability. And the statute is very clear that everything that applies to a general contractor applies to a subcontractor. And the posting requirement, if it were in the act, which it was not at the time, is simply an administrative informants of the way that the worker is to say that, by the way, you're owed a – and that's not what was sued. But it was never taken out of the act. You're saying it wasn't in? I mean it was in, correct, and then there were other amendments that were made, but it was never stricken out. So you have to read the two together, don't you? Yes, Your Honor. It's never stricken, but the text of the act simply omits it out of 9338. Well, that's a public act. It didn't – that public act made an amendment to the statute, correct? Correct. But the posting was not part of that public act. That posting provision wasn't part of the public act. It was not. Okay. Even assuming that the posting was there, I think that when you look at the principles of the Contribution Act, could they have sued us for non-posting? Perhaps. Would that non-posting have rendered the same liability as non-payment? Absolutely not. And the only claim that's relevant for the purposes of contribution is that common liability. That's the underpayment of wages. So non-posting could perhaps be a separate claim, and the Department of Labor has the right to bring that claim, which would then put us on a list of barred contractors. But we can't look at these cases to confuse the two. And I think that when we talk about people versus Brockman, it's important because it really reinforces Cement Mason's idea that there is no duty to ensure the payment of wages. And Brockman, in that case, there was a duty not to pollute, and they were attempting to assert an affirmative defense, so to speak. And in our briefs, you can see we talk about the difference between not having a duty at the outset and having a duty but maybe having a defense or immunity. Well, we don't have a duty, so the issue is we don't have a defense or immunity because we don't have a duty in the first place. In Brockman, they did have a duty not to pollute, and they were asserting an affirmative defense. And that's why the court said, yes, you could be subject to contribution liability. The fact that you have a defense doesn't take you out of the contribution realm. Well, here, we couldn't be subject at the beginning. There's no way that they could have sued us for unpaid wages, and thus we're not even within the contribution realm. But now doesn't the most recent amendment to the statute indicate, as counsel said, the legislature's intent now to somehow make general contractors jointly responsible for seeing that prevailing wages are paid to public works employees? I think that the amendment is actually in support of our argument. The amendment still does not say that they're responsible for wages. What it says is you're responsible for these administrative penalties and fines. The court or the legislator having read Sedmont-Masons could have done what other states and the federal government has done, which is hold the general contractor responsible. And the legislator chose not to do that. They have not imposed a tort duty. They have merely said, if you violate, you are responsible for penalties and you are responsible for fines. On top of that, they additionally amended the act to say, and the failure to receive notice by the general contractor's failure to give notice to the sub does not relieve the subcontractor of its duty to pay the prevailing wage. So they made it very clear that in light of Sedmont-Masons, they were going to follow the idea that you're not going to keep general contractors on the hook all the time. I think the amendment is actually in support of our argument that it does not create a tort liability. It merely creates penalties and fines. It does not attribute a duty. And it further clarifies that by saying, and the duty is still on the subcontractor regardless of posting or regardless of putting anything into a written contract. Here we had an oral contract. So the idea of putting a written statement in is sort of a non-issue. The other thing I would like to address perhaps is that there's some claims about equity. The statute is very clear. It sets out the rights and responsibilities. Equity should not be an issue. It shouldn't be relevant to the determination. But I would pose to this court that it is actually more inequitable to impose liability on a general contractor who does not hire the workers, doesn't determine how much under the prevailing wage that they're paid, does not regulate their hours or how many of them. I would submit to the court that it's even further unequaled to make a general contractor responsible for a subcontractor's unfettered discretion of hiring workers. What about the bidding difference? I mean, come on. It's a huge difference in terms of equities and the position that the subcontractor is in if he had known that this was a prevailing wage job. That's a huge difference, isn't it? Well, it can be. I wouldn't say in every case it is, but perhaps there was a difference there. The subcontractor takes a risk when he doesn't get a written contract. I don't think that we should allow the subcontractor to bury his head in the sand here. I think, too, that when we're talking about the posting requirement, that's after the bidding has already been made. So that doesn't alleviate this issue. By the time the posting is made, the workers have shown up to the job, and now they see, oh, this is a prevailing wage job. Well, that's long past the bidding. And I think that the act in holding subcontractors liable says you need to do your own homework. And subcontractor, if you're going to be bidding on a work and you don't know what it is, that's the risk that you take in making your bid. You need to do that. You need to find out whether or not it's a public works project. The act applies equally to subcontractors. So in a certain sense, you could say that there may be a discrepancy or inequity in the bidding amounts, but I don't think that that is an issue that entirely thrusts the prevailing wage upon the general contractor. Well, based upon the numbers here, isn't it also likely that, although it's not specifically part of this case, your client didn't pay prevailing or didn't bid prevailing wage, and that's how we got down to Mr. Valdivia? Well, I mean, that is potentially an issue that's not relevant here, but there's been no claim that's been made by our clients. As far as I know, the prevailing wage was – I know there's nothing in the record to say either way, but as far as I know, the prevailing wage was paid, and our employees have never sued us. So I don't think that that is certainly not relevant for the purposes of contribution, but I don't think that that was even an issue. And I think that when you look at this idea that the prevailing wage applies equally to both generals and subs, it does say that you need to do your homework a little bit, and ignorance of the law should not be an excuse. Now, these contractual requirements and provisions that are in there, if you get a written contract, then they are in there. And those liabilities run vis-à-vis the sub and the general, not between the general and the sub's employees. In other words, if we fail to put into a written contract that this is a prevailing wage act, that has no bearing on any liability to the underlying plaintiffs here, to their employees. They have no liability as to their wages because that is simply a contractual issue vis-à-vis the sub and the general. And that claim was dismissed and is not on appeal here. So the only claim that this court need be concerned with is a direct claim from the employees of the sub. And any claims vis-à-vis failure to input a written notice or anything like that are not relevant here. The employees of the sub wouldn't even see the written notice theoretically. It's a separate contract. So for anyone to say that there is some sort of privity of that contract that runs to the underlying plaintiffs here, that's not how the statute is laid out. Has there been any allegation thus far in any of the pleadings, since this went down on pleadings essentially, that Valdivia wanted a written contract but there was heavy-handedness to get him to go with an oral contract? No, no such allegation. So I think to take a few things here away from this is that the cement mason's case actually addresses the exact issue that we are concerned with here, which is liability from a general to the employees of a sub. And it says that under the Prevailing Wage Act, not only is there no liability, but it goes even further to say that there's no duty. And it goes even further to say that had the legislature wanted to impose a duty, it could have done so. And I think that because it addresses the relevant liability here, that that really governs the day. The People v. Brockman case is simply in line with that, where the Supreme Court basically said, well, if you had a duty and you didn't do it and you caused the damage, then that's your responsibility and you can be held liable. But it makes a few comments there to say, but to those things that you could not, that were not your responsibility, you can't be held liable in contribution. So I think that the idea here, and counsel has brought up the idea of duty, and that's argued excessively in the briefs. I think the idea of duty not only plays into the lack of ultimate liability, but also the lack of tort liability, which is given a lot of consideration in the briefs. But it's sort of a secondary issue to say, well, we can't be liable. And by the way, we couldn't be liable in tort either. What about the general principle that for every wrong, there should be a remedy? For every wrong, there is a remedy. For the underlying plaintiffs here, they have the right on permanent estate to sue their general contractor. For the general contractor, he has to either take his own responsibility, and if he has any claims against the subcontractor for a breach of contract or something like that, I don't think that those are precluded, but those are not before the court today. So for every wrong, the only wrong that we're concerned with, the only remedy to wrong that we're concerned with here today, is the remedy on the part of the underlying plaintiffs, and the statute sets out their remedy, that they can sue their own employer and nobody else. Thank you, counsel. And thank you for the corporate's time. I guess you want to offer a vote. Just real briefly, Your Honor.  Okay. With regard to the remedy. Well, and I think the remedy is through the contribution claim here. Counsel did talk about that this was an oral contract. You know, there's nothing in the act that states whether it's written or oral contract with the sub that they're... Well, it's kind of hard to put this notice of prevailing wage in the contract if there isn't something to look at. But it says you've got to send a written stipulation. So if you have an oral contract, then send a written stipulation that it's a public works act or public prevailing wage act case. And that wasn't done in this case. Isn't that the city of Woodridge's responsibility at the onset? Well, I think they make the contract with the general, and then it's up to the general to make the contracts with the sub. So that's why the provision is there. In the way that everyone does business, of course, there's oral contracts. People are calling. There's handshakes. They just know this subcontractor from other projects. But the fact of the matter is that the statute doesn't distinguish if it's an oral contract with the sub or a written contract. That written stipulation has to be given. It wasn't done in this case. In this case, I also, in the briefs and also today, counsel argued that the sub can't bury its head. Well, you know, again, the sub wasn't burying its head. The sub wasn't informed of the prevailing wage act, which the general was required to inform him of. Is the sub from out of this state? I don't believe so. So what prevented the sub from doing exactly what they're responsible for in these newer amendments? Well, I think if he knows the act, he knows that the general is supposed to tell him if it's a prevailing wage act job, and he didn't. So he can know that he's working in a city on a street which belongs to the people of the city of Woodridge, and because the general has not told him, by the way, this is a prevailing wage act job, he has no responsibilities? Well, no, I think he is responsible, and I think for the trier of fact to decide how much responsibility that the sub has, but also how much responsibility the general has as well. The other point I'd like to make is cement masons is not from this district. It's not. It's only persuasive, not controlling, and I think what counsel and appellee are asking the court to do is an unwarranted expansion of cement masons. Cement masons is a very limited holding. It said you are not the guarantor of an insolvent sub's employee's underpayment to those subcontractors' employees. There was no violation of the act alleged. It just simply is so distinguishable on its facts that I don't believe the court should expand it, and it's an unwarranted expansion of that holding for all the reasons I've stated here today and also in the briefs. We'd ask that it be reversed and remanded unless anyone has questions. Thank you, counsel, for your argument. We will make this decision in due course.